# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

**JAMES A. JACKSON**,

    Plaintiff,

    v.

**MULTNOMAH COUNTY, et. al.,**

    Defendants.

Case No. 3:12-cv-00764-SI

**OPINION AND ORDER**

James A. Jackson, United States Penitentiary, P.O. Box 24550, Tuscan, Arizona, 885734, *pro se*.

Jenny M. Morf, County Attorney for Multnomah County, Oregon, B. Andrew Jones, Assistant County Attorney, 501 S.E. Hawthorne Blvd., Suite 500, Portland, Oregon 97214. Attorneys for Defendants.

**SIMON, District Judge.**

    Plaintiff James Jackson filed *pro se* claims under 42 U.S.C. § 1983, alleging that Defendants violated the Eighth and Fourteenth Amendments to the United States Constitution by, among other things, acting with deliberate indifference to Plaintiff's medical needs while he was incarcerated at a Multnomah County correctional facility. Defendants move for summary judgment against all of Plaintiff's claims. Dkt. 17. This motion is granted for the reasons that follow.

PAGE 1, OPINION AND ORDER

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

## FACTUAL BACKGROUND

On January 28, 2010, Mr. Jackson was transferred from the Federal Correctional Institute in Sheridan ("Sheridan") to a Multnomah County correctional facility. On January 27, 2010, immediately before his transfer, a medical form was completed assessing his medical condition for transfer. Mr. Jackson was assessed with "psychosocial and environmental problems," chronic pain, chronic conjunctivitis, posttraumatic stress disorder, hysteria, asthma, major depressive disorder, unspecified deformity of the foot and ankle, cellulitis and skin lesions, superficial finger injuries, alcohol abuse, and a report of a seizure.

Mr. Jackson was interviewed by Multnomah County personnel at intake regarding his mental health and medical history. This assessment noted that Mr. Jackson was on medication

PAGE 2, OPINION AND ORDER

for pins in his left foot, suffered from anxiety, and was on prescription medication at the time of his transfer. A "Special Handling Form" dated January 28, 2010, endorses "routine medical needs" and contains indications that Mr. Jackson should be placed on a lower bunk and lower tier with two extra blankets. On February 2, 2010, a similar form indicates that Mr. Jackson should receive "medical shoes."

On January 30, 2010, and February 1, 2010, Mr. Jackson submitted Medical Request Forms ("medical request"), requesting treatment for foot pain relating to his club foot condition. In these requests he complained of severe pain. On February 2, 2010, he received orthopedic shoes. On February 4, 2010, Mr. Jackson complained that he continued to have foot pain and that his psychiatric medication was not working and needed to be changed. On February 10, 2010, Mr. Jackson submitted another medical request seeking an eye exam and was told that the Department of Corrections did not perform eye exams. This medical request reflects that as of February 10, 2010, Mr. Jackson had been moved to a lower tier bunk.

On February 11, 2010, Mr. Jackson submitted a medical request stating that he fell down the stairs on February 9, 2010, and injured his knee. A nurse treated him for this incident on February 12, 2010, and wrote that Mr. Jackson ambulated normally and had normal extension and flexion. The nurse further noted that Mr. Jackson stated that he was very angry about not receiving the medications he had received at Sheridan (additional psychiatric medications and opiates for pain).

Mr. Jackson filed an inmate grievance on February 12, 2010, stating that he was not receiving medication as prescribed and that he fell because his equilibrium was off as a result of not having his medication. He filed another medical request on February 14, 2010, stating that he

PAGE 3, OPINION AND ORDER

would like to see a doctor "about my knee." A nurse evaluated him again on February 15, 2010, noting his complaints of knee pain, and assessing a normal gait with mild patellar swelling.

Mr. Jackson filed another grievance on February 19, 2010, stating that he was placed in an upstairs cell on January 30, and on February 9 or 10, 2010, he fell going up the stairs and injured his knee. Mr. Jackson threatened to bring a § 1983 lawsuit for deliberate indifference if his knee issue was not properly resolved. On February 19, 2010, Mr. Jackson also filed a medical request stating that he had an appointment to see a doctor on February 18, but did not see a doctor on that day and requested another appointment. On February 21, 2010, he filed a third grievance form, stating that he had not yet seen a doctor and was not receiving medical treatment. He filed a fourth grievance on February 25, 2010, again stating he had not seen a medical provider.

On March 3, 2010, a medical provider noted Mr. Jackson's knee pain and report that he "fell on his patella." An x-ray on March 3, 2010, showed "radiographically unremarkable right knee." On March 3, 2010, Mr. Jackson executed a "Notice of Tort Claim" and attached copies of his complaints related to his knee issues and mailed the Notice on March 4, 2010 to the "County Attorney's Office." Mr. Jackson submitted a medical request form on March 7, 2010, stating that Tylenol was not helping his knee pain. A nurse evaluated Mr. Jackson on March 9, 2010, noting his complaints of "extreme knee pain," and stating that staff observed him walking normally.

Mr. Jackson wrote a letter on March 11, 2010, stating that he fell on or about February 9, 2010, has been in constant pain since, and should not have been assigned an upstairs cell. Mr. Jackson also threatened civil action in conjunction with this "deliberate indifference" to his needs.

PAGE 4, OPINION AND ORDER

Mr. Jackson submitted another request for pain medication on March 12, 2010, and a nurse again treated him on March 13, 2010.

Multnomah County Health Department physician Ole Errson, M.D., evaluated Mr. Jackson on March 17, 2010, stating that Mr. Jackson had chronic foot pain due to surgery performed in 2004, knee pain following his fall on February 9, 2010, and that an x-ray of his knee was negative. Dr. Errson ordered another x-ray, and told Mr. Jackson he was unwilling to prescribe narcotics. Medical staff observed Mr. Jackson walking and performing activities of daily living normally on March 18.

Between March 17 and 31, 2010, Mr. Jackson again wrote that he was being denied medical attention, and submitted five requests for treatment so that he could "explain my issues" relating to his mental health, and for treatment of his allergies and knee pain. He also asked for additional review of x-rays of his knee. A March 31, 2010, x-ray showed that his left foot "appears relatively normal" at the forefoot, with "postsurgical and posttraumatic findings" and bony fusions at the midfoot and "talar abnormalities" in the hindfoot. Also on that date a physician's assistant noted Mr. Jackson's complaint of knee pain and stated that it was "likely healed" and noted "possible loosening" of staples in his left foot.

On April 6, 2010, Mr. Jackson was given a knee brace. He was also seen by a psychiatric nurse practitioner, who noted Mr. Jackson's "rather unusual" combination of psychiatric medicine prescribed at Sheridan. Based on Mr. Jackson's representation that the combination of psychiatric medications was effective in calming him down, the nurse practitioner ordered the same combination. A physician's assistant again assessed knee pain on April 28, 2010, and prescribed Tylenol.

On April 21, 2010, and May 2, 2010, Mr. Jackson submitted requests to have his wisdom teeth pulled.

Mr. Jackson filed a fifth grievance on April 28, 2010, stating that he is in constant pain from his left ankle hardware, and that "it seem[s] like my appointments continue to be put off about my right knee problem."

A nurse treated Mr. Jackson's allergy complaints on May 2, 2010. Mr. Jackson submitted requests relating to his allergies on May 5, 2010, and May 10, 2010. He received allergy consultations on May 5 and May 11, 2010. On May 10, 2010, Mr. Jackson filed a grievance regarding allergy medication for itchy eyes. Finally, on May 15, 2010, Mr. Jackson again requested stronger pain medication for his knee.

The records of Mr. Jackson's medical requests, grievances and letters to officials show repeated requests for narcotic pain medication, which were refused. Mr. Jackson was prescribed Tylenol and Ibuprofen.

## ANALYSIS

Defendants argue that summary judgment should be granted because: (1) the statute of limitations has expired; (2) Mr. Jackson's Eighth Amendment claims fail as a matter of law; and (3) his Fourteenth Amendment claims fail as a matter of law. The Court also addresses Mr. Jackson's October 10, 2012 motion for appointment of counsel.

**A. Mr. Jackson's Claims are Barred by the Applicable Statute of Limitations**

Oregon law's two-year statute of limitations for personal injury actions, ORS 12.110(1), applies to claims under 42 U.S.C. § 1983. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). Further, a § 1983 claim accrues when the plaintiff knows, or has reason to know, of the injury upon which he bases his action. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). For purposes of accrual, an incarcerated plaintiff is given the benefit of a "prison

PAGE 6, OPINION AND ORDER

mailbox rule," meaning that an action is deemed to commence upon deposit in the prison mailbox ("delivery to prison authorities") rather than at filing with the clerk of court. *Houston v. Lack*, 487 U.S. 266, 275 (1988).

Under these principles, Mr. Jackson's suit commences on the date he mailed his complaint, which is April 25, 2012. Dkt. 2. Oregon's statute of limitations instructs that any action for assault, battery, or other personal injury "shall be commenced within two years." O.R.S. § 12.110(1). Therefore, under Oregon law, Mr. Jackson's claims must have accrued after April 25, 2010, to be considered timely. Mr. Jackson alleges a physical injury that began on February 9, 2010.

Mr. Jackson first complained of knee pain to prison officials on February 10, 2010, and repeatedly referenced the date of his injury as February 9, 2010, in later medical visits. As early as February 19, 2010, Mr. Jackson was threatening to file a "deliberate indifference" lawsuit under § 1983 because of alleged improper treatment of his knee condition. Notably, on March 4, 2010, Mr. Jackson sent a Notice of Tort Claim to the "County Attorney's Office," attaching records of his knee complaints. Mr. Jackson also threatened a lawsuit on March 11, 2010, because of alleged "deliberate indifference" to his medical needs. This record clearly shows that Mr. Jackson knew not only of his underlying injury, but also of his alleged "deliberate indifference" claims well before April 25, 2010. Thus, his claims are beyond the applicable two-year statute of limitations.

Mr. Jackson argues that his claim is tolled while he is incarcerated under O.R.S. § 12.160(3). Pl.'s Resp. 1-2 (Dkt. 25). The Oregon statute relied on by Mr. Jackson, however, no longer allows tolling for incarceration. The statute presently allows tolling only for insanity. O.R.S. § 12.160(3) ("If a person is entitled to bring an action that is subject to the

PAGE 7, OPINION AND ORDER

statute of limitations . . . and at the time the cause of action accrues the person is insane, the statute of limitation for commencing the action is tolled for so long as the person is insane.") (internal citations omitted). Mr. Jackson does not argue that the insanity tolling provision applies to him, but instead relies on the previous version of the statute to argue that incarceration tolls the statute of limitations. Because the statute was amended in 1997 and no longer provides for tolling based on incarceration, this argument is rejected.

Mr. Jackson also argues that his claim is equitably tolled because he sent the Notice of Tort Claim to the County Attorney. Dkt. 3, Attch. 1 (Request for Judicial Notice). In § 1983 claims, federal courts apply the tolling doctrine of the forum state. *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999). The Oregon Tort Claims Act contains no equitable tolling provision, and the Court was unable to locate any statutory or other authority allowing for equitable tolling. *See Alexander v. Dorn*, No. CV-11-102-ST, 2011 WL 4975258 at *3 (D. Or. July 18, 2011) ("Because [Plaintiff] 'cites no authority, and the court is aware of none, suggesting that federal courts in Oregon may apply equitable tolling to § 1983 cases,' this court declines to do so.") (quoting *Reynolds v. Guisto*, No. CV 08-6261-PK, 2009 WL 2523727 at *3 (D. Or. Aug. 18, 2009)). Even if Oregon did allow for equitable tolling in a § 1983 claim, such equitable tolling requires a formal, legal process be undertaken, and filing an administrative tort claim or sending a tort claims notice under the Tort Claims Act fails to equitably toll the statute of limitations. *See Stone v. City and County of San Francisco*, 735 F. Supp. 340, 343-45 (N.D. Cal. 1990). Thus, Mr. Jackson's argument that the statute of limitations was equitably tolled in this case fails.

**B. Mr. Jackson's Claims Under the Eighth Amendment**

Even if Mr. Jackson's claims were timely, they fail as a matter of law. The Amended Complaint asserts ten causes of action, all of which relate to the medical care provided (or refused to be provided) to Mr. Jackson. Mr. Jackson claims his Eighth Amendment rights were

PAGE 8, OPINION AND ORDER

violated because prison officials provided inadequate medical care for his knee injury and chronic pain. In the factual recitation of his Amended Complaint, Mr. Jackson also alleges that prison officials failed to place him on a lower-tier bunk as an accommodation for his pre-existing conditions. Although Mr. Jackson does not allege a cause of action related to the bunk accommodation, this Court interprets *pro se* complaints liberally and construes Mr. Jackson's factual assertion as an additional claim for an Eighth Amendment violation relating to his placement in a higher tier bunk.

The Eighth Amendment prohibits "cruel and unusual punishments," and, therefore, "places restraints on prison officials." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). It also places duties upon prison officials to provide humane conditions of confinement, including, "adequate food, clothing, shelter, and medical care, and . . . reasonable measures to guarantee the safety of the inmates." *Id.* (quotations and citation omitted).

### 1. Medical Care

The government has an obligation "to provide medical care to those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to serious medical needs constitutes unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment. *Id.* at 104. In this context, however, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. In order to state a claim relating to medical care under § 1983, a prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Allegations that a medical professional was negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id.*

To establish an Eighth Amendment violation under § 1983 a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051,

PAGE 9, OPINION AND ORDER

1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, the plaintiff must show that the prison official deprived him of the "minimal civilized measure of life's necessities." *Id*. (quotations and citation omitted). Second, he must demonstrate that the prison official "acted with deliberate indifference in doing so." *Id.*(quotations and citation omitted). Under this standard, for example, a medical decision to decline ordering an x-ray does not represent cruel and unusual punishment, but is a matter for medical judgment. *Estelle*, 429 U.S. at 107.

Here, Mr. Jackson alleges that he was provided insufficient medical care for his knee injury and for his chronic pain, particularly by being refused narcotic pain medication. Mr. Jackson received medical care throughout his incarceration at the Multnomah County correctional facility. He submitted repeated requests for care throughout February, March, and April 2010, and received nearly twenty medical treatment visits during that period. Mr. Jackson received a response from Multnomah County Corrections Department officers regarding each of his requests for medical care and associated grievance reports.

With respect to his knee, Mr. Jackson was seen repeatedly by nurses, medical assistants, and nurse practitioners and was also seen by an orthopedic specialist. He was given multiple x-rays. The examinations and x-rays were negative. Despite the negative results, based on his representations of his symptoms, Mr. Jackson was provided with non-narcotic pain medication, a cane, a knee brace, and additional diagnostic examinations. County officials refused to provide him with narcotics for pain, but offered non-narcotic options and documented observations that Mr. Jackson appeared to be more ambulatory than his claims of extreme pain would indicate. No evidence in the record suggests that Mr. Jackson was, with deliberate indifference, deprived of "life's necessities." At most, Mr. Jackson claims his knee was treated negligently and should

have had a more aggressive treatment, but negligent treatment does not support an Eighth Amendment claim. *Estelle*, 429 U.S. at 106-07.

With respect to his request for narcotic pain medication based on his chronic pain, the record shows that most of Mr. Jackson's requests for pain medication were related to his knee injury, discussed above. There are some requests in the record in which Mr. Jackson references his chronic pain and previous pain medication. The failure to administer narcotic pain medication in such circumstances, however, does not rise to the level of a constitutional infringement— Mr. Jackson was provided with non-narcotic pain medications, and narcotics in these circumstances were not a life necessity. *See e.g., Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (failure to provide local anesthetic for pain does not suffice for an Eighth Amendment claim); *Salvatierra v. Connolly*, No. 09 Civ. 3722 (SHS) (DF), 2010 WL 5480756 at *20 (S.D.N.Y. Sept. 1, 2010) (providing ibuprofen instead of Percocet does not deprive an inmate of one of life's necessities); *Fields v. Roberts*, No. 1:06-cv-00407-AWI-YNP, 2010 WL 1407679 at *4 (E.D. Cal. April 7, 2010) (refusing to prescribe narcotic pain medication even when an outside doctor recommended it is a difference in medical opinion on the proper course of treatment and is not a basis for an Eighth Amendment claim). Prison officials have broad discretion to determine medical care and an inmate is not entitled to the treatment he wants. *Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970). Differing treatment options are at the discretion of the medical professionals and even if the decisions relating to Mr. Jackson's pain medication were medically erroneous (which is not clear from the record), they cannot be characterized as disregard for an excessive risk of inmate health. *Snipes*, 95 F.3d at 591; *see also Estelle*, 429 U.S. at 107. This record, therefore, does not support a finding of "deliberate indifference" to a serious medical need with respect to Mr. Jackson's pain medication.

For these reasons, Mr. Jackson fails to establish a genuine issue concerning whether Defendants violated the Eighth Amendment regarding his medical care.

### 2. Prison Accommodation

Mr. Jackson also alleges that defendants were indifferent to his needs in placing him on a top tier bunk. First Am. Compl. ¶¶ 15-20 (Dkt. 6), Pl.'s Resp., p. 3 (Dkt. 25). This bunk assignment occurred before Mr. Jackson injured his knee, and related only to his unspecified foot condition presented upon intake examination. Within one day after his knee injury, Mr. Jackson was moved to a lower-tier bunk.

Deliberate indifference requires that the prison official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057 (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under this standard, the prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057. If a prison official knows the facts but does not draw the inference of risk, no matter how severe the risk and even if the prison official should have known about the risk, the prison official does not violate the Eighth Amendment . *Toguchi*, 391 F.3d at 1057.

Here, at the time Mr. Jackson entered custody, he was assessed as needing a lower bunk due to unspecified ankle and foot issues, but was assigned a higher bunk for the first approximately 12 days of his incarceration, until after he fell and injured his knee. The record before the court contains observations by prison officials of Mr. Jackson's ability to walk normally and climb stairs, even after his alleged knee injury. He was moved to a lower tier bunk immediately after his fall and knee injury. Additionally, Mr. Jackson himself reported that the cause of his fall was not his ankle or foot condition, but that he fell because his equilibrium was off because he was not provided the same medications he had received at Sheridan.

PAGE 12, OPINION AND ORDER

To succeed in his Eighth Amendment claim on the matter, Mr. Jackson must show that prison officials were both aware of a substantial risk of serious harm and *deliberately* disregarded it in assigning him a higher tier bunk. The record showing Mr. Jackson's normal ambulation does not show that he required accommodation in a manner that prison officials deliberately disregarded. Plaintiff offers no evidence that any prison official knew that his ankle and foot condition or the fact that he was not receiving the same medications he received at Sheridan could result in a substantial risk of serious harm if he was assigned a higher tier bunk or that any prison official deliberately disregarded this risk. To the contrary, once Mr. Jackson fell and injured his knee and the risk of harm became known to the prison officials, Mr. Jackson was immediately moved to a lower tier bunk. Accordingly, Mr. Jackson's claim of an Eighth Amendment violation based on his original cell assignment to a higher tier bunk fails.

**C.  Mr. Jackson's Claims Under the Fourteenth Amendment**

Mr. Jackson alleges that Defendants violated his Fourteenth Amendment rights based on the same allegations of cruel and unusual punishment. The Supreme Court holds, however, that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Mr. Jackson alleges harm under the Eighth Amendment's prohibition against cruel and unusual punishment. He therefore cannot claim Fourteenth Amendment substantive due process protection for the same claim.

**D.  Motion for Appointment of Counsel**

Finally, on October 10, 2012, Mr. Jackson moved the Court to allow appointment of counsel. Dkt. 32. This motion was filed after the summary judgment briefing was completed.

PAGE 13, OPINION AND ORDER

This Court has discretion under 28 U.S.C. § 1915(e)(1) to request volunteer counsel for indigent civil litigants in exceptional circumstances. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). In determining whether exceptional circumstances exist, a court evaluates the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his or her claim *pro se* in light of the complexity of the legal issues involved. *Palmer*, 560 F.3d at 970; *Agyeman*, 390 F.3d at 1103. However, "[n]either of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under [former] section 1915(d)." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

Mr. Jackson has demonstrated sufficient ability to articulate his claims. The facts and legal issues involved are not of substantial complexity. Mr. Jackson has not demonstrated likely success on the merits. Accordingly, there are no exceptional circumstances that warrant the appointment of counsel under § 1915(e), and the motion is denied.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. 17) is GRANTED. Plaintiff's motion for appointment of counsel (Dkt. 32) is DENIED. The matter is dismissed.

**IT IS SO ORDERED**.

DATED this 4th day of February, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge